## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILVERWOOD PARTNERS LLC,<br><br>　　　　　　*Plaintiff*,<br><br>　v.<br><br>SONIC FOUNDRY, INC.,<br><br>　　　　　　*Defendant*,<br><br>　and<br><br>U.S. BANK, N.A.,<br><br>　　　　　　*Trustee Defendant*. | C.A. No. _____ |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Silverwood Partners LLC alleges claims against Sonic Foundry, Inc. for (I) breach of contract, (II) unjust enrichment/quantum meruit, and (III) trustee process, and states as follows:

### NATURE OF THE ACTION

1.　　This is an action for breach of contract and unjust enrichment/quantum meruit based on Sonic Foundry's knowing refusal to pay certain invoices for financial-advisory and investment-banking services in connection with the closed sale of Sonic Foundry's Mediasite business.  For six months, Sonic Foundry ignored invoices for Silverwood's diligent work to facilitate that sale.  With the sale of Mediasite now closed and Sonic Foundry flush with more than $15 million in proceeds from the sale that Silverwood arranged, Sonic Foundry has ignored Silverwood's demands for payment of the more than $800,000 that Sonic Foundry owes for Silverwood's services.  At the same time, Sonic Foundry has disclosed that its business is running out of cash, owes millions to creditors, and is considering strategic alternatives for the business.

Silverwood therefore also seeks equitable relief in the form of trustee process attachment on Sonic Foundry's bank accounts.

## PARTIES

2.      Plaintiff Silverwood Partners LLC ("Silverwood") is a Massachusetts-based industry-focused investment bank that provides merger & acquisition advisory services, private capital financing capabilities, and financial and strategic advisory services to clients worldwide.

3.      Silverwood Partners LLC is a limited liability company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business at Silverwood Farm Place, 32 Pleasant Street, Sherborn, Massachusetts.  All members of Silverwood are domiciled in Massachusetts.

4.      Defendant Sonic Foundry, Inc. is a Wisconsin-based information technology company.

5.      On information and belief, Sonic Foundry, Inc. is a corporation organized under the laws of the state of Maryland with its principal place of business at 222 W. Washington Avenue, Madison, Wisconsin.

6.      On information and belief, Trustee Defendant U.S. Bank, N.A. is a national banking association with its main office in Cincinnati, Ohio and its principal place of business in Minnesota.

## JURISDICTION AND VENUE

7.      Subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

8.      This Court has personal jurisdiction over Sonic Foundry because, among other things, Sonic Foundry irrevocably and unconditionally consented to the exclusive jurisdiction of

the courts in the Commonwealth of Massachusetts for any actions, suits, or proceedings arising out of or relating to the agreements at issue.

9.      Venue is proper because Sonic Foundry irrevocably consented to venue in the federal courts in Massachusetts for any actions, suits, or proceedings arising out of or relating to the agreements at issue.  Venue is further proper under 28 U.S.C. § 1391(b)(2) because, among other things, a substantial part of the events or omissions giving rise to the claims occurred in this district because Sonic Foundry engaged a Massachusetts-based entity to provide financial-advisory and investment-banking services but failed to pay for those services.

<strong>FACTS</strong>

10.     In January 2023, Sonic Foundry began exploring the sale of certain units of its business.  To facilitate those sales, Sonic Foundry asked Silverwood to serve as Sonic Foundry's financial advisor and investment banker for those potential sales.

11.     One of those potential sales was for Sonic Foundry's Mediasite business, the company's video-management platform.  Pursuant to a letter agreement dated January 24, 2023, Sonic Foundry engaged Silverwood to provide financial-advisory and investment-banking services in connection with a possible strategic transaction involving Sonic Foundry's Mediasite business or all or any part of the company (including, without limitation, its Vidable and Global Learning Exchange business segments).

12.     The parties executed a written engagement agreement on February 17, 2023 (the "Mediasite Agreement").  *See* Exhibit A (all exhibits are attached to this Verified Complaint).

13.     Sonic Foundry acknowledged that the engagement would "require a substantial professional commitment of time and effort by Silverwood."  To compensate Silverwood for that effort, Sonic Foundry agreed to a fee structure under which it would pay fixed amounts for various

aspects of the work, as well as a "Sale Transaction Fee" if a sale of the Mediasite business was successful.

14.     Under the Mediasite Agreement, Sonic Foundry agreed to pay for Silverwood's financial-advisory services through a $12,500 startup fee, due upon signing the Mediasite Agreement, plus $7,500 due every thirty days thereafter.

15.     The Mediasite Agreement also entitled Silverwood to a Sale Transaction Fee after the closing of a sale.  The Sale Transaction Fee was calculated as the greater of $500,000, or a percentage of the "Aggregate Consideration" in connection with the sale, with the percentage increasing if Silverwood could meet certain financial milestones for the sale.  Sonic Foundry agreed that the Aggregate Consideration for the Sale Transaction Fee would be calculated using a worksheet attached to the Mediasite Agreement, which would include the value of all cash and non-cash consideration for the sale.  The Sale Transaction Fee was due and payable upon the closing of the sale, and payment of Silverwood's Sale Transaction Fee was required to be a condition to the closing of a Sale Transaction.

16.     The Mediasite Agreement also entitled Silverwood to a fee for a "Private Placement," which the Agreement defined to include a transaction involving "the conversion or exchange of any of the Company's existing debt, equity or other securities or obligations."  For a Private Placement, Sonic Foundry agreed that Silverwood would be paid $250,000 or a percentage of the gross proceeds, whichever is greater.  That fee would be discounted by 25% if the Private Placement or debt conversion was completed with Mark Burish, a company insider.

17.     Sonic Foundry further agreed that, if any amounts due under the Agreement remained unpaid for more than thirty days, interest would accrue on those unpaid amounts at the rate of 1.5% per month from the date the fees and expenses became due until paid.

18.     From January 2023 through December 2023, Silverwood advised and assisted Sonic Foundry in a comprehensive canvassing of the market for the sale of the Mediasite business. As detailed in the Sonic Foundry January 16, 2024 proxy statement, Silverwood contacted on a worldwide basis over 349 potential purchasers of the Mediasite business.   Nondisclosure agreements were executed with 37 potential purchasers, and 5 acquisition proposals were received from those potential purchasers.

19.     Each month, Silverwood invoiced Sonic Foundry for the financial-advisory fees earned.   Over six months, Silverwood sent Sonic Foundry six invoices, each for $7,500.   In November 2023 and December 2023, Silverwood discussed payment of delinquent financial-advisory fee amounts with Sonic Foundry.   On December 15, 2023, Silverwood received a payment of $25,000 toward unpaid financial advisory fees.   On January 19, 2024, Silverwood informed Sonic Foundry that six invoices were outstanding and unpaid, but Sonic Foundry did not pay these fees, claiming instead that it did not have the cash to do so.

20.     The sale of the Mediasite business closed on February 9, 2024.

21.     Mr. Burish is the largest Shareholder of Sonic Foundry, the Chairman of Sonic Foundry's Board and, after the Mediasite Sale, is the largest debtholder of Sonic Foundry.  In the course of providing financial advice and analysis to Sonic Foundry, Silverwood Partners was asked to analyze the amount of cash that would be available to Sonic Foundry after the sale of the Mediasite business.  Silverwood Partners was instructed to assume that approximately $5 million of Sonic Foundry debt held by Mr. Burish would be converted into equity in connection with the sale of the Mediasite business. On information and belief, the sale encompassed a related transaction that has closed or may imminently close involving the conversion of up to $5 million of debt held by Mr. Burish.

22.     At Sonic Foundry's request, Silverwood also had provided financial-advisory services to accomplish the debt-conversion transaction with Mr. Burish.

23.     Following the Mediasite sale, Silverwood calculated the Aggregate Consideration in accordance with the schedule attached to the Mediasite Agreement.   The Aggregate Consideration for the sale was $14,263,305.20.  This amount was calculated based on reducing the $15,500,000 purchase price by certain accounts payable liabilities that were retained by Sonic Foundry.  The amount and extent of deduction of those liabilities were agreed with Sonic Foundry in preparation of a fairness opinion that was rendered to Sonic Foundry's Board on December 22, 2023, as fully detailed in the proxy statement at the "Opinion of Our Financial Advisor" section. *See* Exhibit B, Sonic Foundry, Inc., Proxy Statement (Schedule 14A) (Jan. 16, 2024).  Based on the Aggregate Consideration amount of $14,263,305.20, Silverwood is entitled to a fee equal to 4% of that Aggregate Consideration, or $570,532.

24.     In January 2024, Silverwood had been instructed by Sonic Foundry to assume that Mr. Burish's debt would be converted in connection with the sale of the Mediasite business.  Based on such information and assumption regarding the debt-conversion transaction with Mr. Burish, Silverwood calculated its fee earned under the Private Placement fee provision of the Mediasite Agreement to be $187,500, or $250,000 discounted by 25%.

25.     On February 12, 2024, Silverwood sent its itemized fee calculation and invoice for the Mediasite transaction to Sonic Foundry, demanding immediate payment of $807,291.  That amount included the $570,532 Sale Transaction Fee, the $187,500 debt-conversion fee, $42,500 for unpaid financial-advisory services, and $6,759 in interest for delinquent payments.  *See* Exhibit C.

26.     Although all amounts are due, and despite subsequent written demand, Sonic Foundry has failed to pay the invoice as required by the Mediasite Agreement.

## COUNT I
## Breach of Contract

27.     Silverwood realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

28.     The Mediasite Agreement between Silverwood and Sonic Foundry is a binding and enforceable agreement.

29.     Sonic Foundry breached the Mediasite Agreement by, among other things, failing to pay Silverwood for professional fees as they became due, including the Sale Transaction Fee, fees for financial advisory services, fees for the debt conversion, and applicable interest for overdue amounts under the Mediasite Agreement.

30.     As a direct and proximate cause of Sonic Foundry's breach, Silverwood has suffered and will continue to suffer damages in the form of unpaid invoices, interest, and costs and incurred in collection.

31.     Additionally, Sonic Foundry's failure to make timely payments has required Silverwood to incur unnecessary legal costs that are a direct and proximate result of Sonic Foundry's breach of contract.

## COUNT II
## Quantum Meruit/Unjust Enrichment

32.     Silverwood realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

33.     If this Court finds that Silverwood may not recover for breach of the Mediasite Agreement, Silverwood is entitled in the alternative to damages for unjust enrichment or quantum meruit.

34.     At Sonic Foundry's request, and with its knowledge and consent throughout, Silverwood provided substantial and valuable financial-advisory and investment-banking services for Sonic Foundry's benefit, with the reasonable expectation of being compensated for the value of those services.

35.     Sonic Foundry accepted Silverwood's services without objection and knew, or should have known, that Silverwood expected Sonic Foundry to compensate Silverwood for the value of those services.

36.     Sonic Foundry was invoiced by Silverwood for its services, but Sonic Foundry has refused to compensate Silverwood for all the services provided.

37.     As a result, Sonic Foundry has been unjustly enriched, and Silverwood is entitled to be paid the fair value of the services it provided to Sonic Foundry.

**COUNT III**
**Trustee Process**

38.     Silverwood realleges and incorporates by reference the allegations of the paragraphs of this Complaint as though fully set forth herein.

39.     By not receiving full and prompt payment of its fees, Silverwood has suffered a substantial injury in the principal amount of at least $807,291, plus continuing interest and the costs and fees required to collect all amounts due and bring this action.

40.     There is a reasonable likelihood that Silverwood will recover these damages in full.

41.     Upon information and belief, Sonic Foundry does not have insurance of any kind that would cover the amount owed to Silverwood.

42.     Sonic Foundry maintains an account at U.S. Bank, N.A.

43.     In two of its recent filings with the Securities and Exchange Commission, Sonic Foundry stated that following the sale of the Mediasite business, Sonic Foundry's business

operations are "limited to the Vidable and Global Learning Exchange businesses, both of which generate limited revenues, negative cash flow and significant losses." *See* Exhibit B, Sonic Foundry, Inc., Proxy Statement (Schedule 14A) (Jan. 16, 2024); Exhibit D, Sonic Foundry, Inc., Current Report (Form 8-K) (Feb. 6, 2024). Sonic Foundry's CEO also told Silverwood as recently as January 19, 2024, that the company did not have the cash to pay Silverwood's invoices. Immediate danger therefore exists that Sonic Foundry will dissipate the funds at U.S. Bank.

44.     Accordingly, a trustee process attachment of Sonic Foundry's goods, effects, credits, and/or monies in the possession of U.S. Bank is necessary to secure funds sufficient to guarantee that Silverwood will recover the likely judgment in its favor in this action.

45.     No bond is required under Mass. Gen. Laws ch. 246, § 1, as this is an action upon a written contract.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Silverwood Partners LLC respectfully requests that this Court enter judgment in its favor and against Defendant Sonic Foundry, Inc. as follows:

A.     Award compensatory, incidental, and consequential damages against Sonic Foundry;

B.     Award pre-judgment and post-judgment interest;

C.     Award costs, expenses, and fees, including attorneys' fees;

D.     Issue an order approving attachment on trustee process of the goods, effects, credits, and/or monies of Sonic Foundry in the amount of at least $807,291 in the possession of U.S. Bank, N.A.; and

E.     Award any other relief that may be just, equitable, and proper.

Dated: February 16, 2024

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.


*/s/Peter A. Biagetti*

Peter A. Biagetti, BBO # 042310
PABiagetti@mintz.com
Mitchell J. Clough, BBO # 705227
MJClough@mintz.com
One Financial Center
Boston, MA  02111
Telephone:    (617) 542-6000
Facsimile:     (617) 542-2241

*Attorneys for Plaintiff Silverwood Partners
LLC*

## VERIFICATION

I, Jonathan Hodson-Walker, on behalf of and as authorized by Silverwood Partners LLC, state that I have read the foregoing Verified Complaint and am familiar with its content, and to the best of my knowledge and belief, the facts alleged therein are true and accurate except where stated on information and belief, in which event I believe the same in good faith to be true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 16, 2024

Jonathan Hodson-Walker,
Managing Partner